```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         SOUTH BEND DIVISION
```

| | |
|---|---|
| LARRY D. CAMERON, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 3:07-CV-0008 PS |
| DR. GERALD MYERS, M.D., | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Larry D. Cameron, a *pro se* prisoner, brought this action pursuant to 28 U.S.C. § 1983 on January 15, 2007. This court's screening order of March 23, 2008, granted him leave to proceed against the defendant, Dr. Gerald Myers, M.D., in his personal capacity for damages on his Eighth Amendment deliberate indifference to serious medical needs claim. (Docket #6). Mr. Cameron seeks compensatory damages for physical and emotional injures he suffered, and he seeks punitive damages.

The defendant was served with process (Docket #12), but he never entered an appearance. On June 25, 2007, the plaintiff filed a request for entry of default. (Docket #15). On June 27, 2007, the clerk entered a default against Dr. Myers for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure 55(a). On August 6, 2007, Mr. Cameron filed a motion for default judgment.

The district court referred this case to the undersigned magistrate judge for the disposition of all dispositive and non-dispositive matters pursuant to 28

U.S.C. § 636(b)(1)(B). (Docket #19). This court entered an order affording the plaintiff time within which to submit an affidavit stating what the defendant did to him and how he was damaged by the defendant's actions, and within which to submit medical records or any other documentary evidence he believed would help the court establish his damages. The plaintiff responded by submitting his affidavit and documents from his medical records.

After reviewing the plaintiff's submissions, the court set this matter for a hearing, which was conducted on May 14, 2008. At the hearing, Mr. Cameron was examined by the court and testified about the discomfort, pain, and complications he suffered as a result of not being treated by Dr. Myers. The court now enters its findings of fact and conclusions of law in accordance with FED. R. CIV. P. 52.

## I. FINDINGS OF FACT

According to Mr. Cameron's affidavit, (Docket #24 ) and the medical records he submits along with his affidavit (Dockets #24-1 and #24-3), he suffers from Crohn's Disease. His initial care giver, Dr. Omar Nehme, M.D., a specialist, diagnosed Mr. Cameron as suffering from Crohn's Disease as early as January 2006 (Docket # 24-1), and stated that Mr. Cameron "had an intricately prescribed medical regimen in place that was successfully treating the Plaintiff's Crohn's (sic) disease." (Docket #24, plaintiff's affidavit ¶ 1). Dr. Nehme prescribed Remicade for Mr. Cameron as part of his treatment. (Docket # 24-1). Prior to September 2006, Dr. Nehme ceased to be Mr. Cameron's care giver, and Dr. Myers became "the only doctor that could have provided the urgent medical care and treatment that was required by the Plaintiff." (Docket #24, plaintiff's affidavit ¶ 6). Mr. Cameron's

2

medical records establish that Dr. Nehme last renewed Mr. Cameron's Remicade prescription on June 20, 2006, (Docket #24-1), and that when that prescription expired, it was not renewed. (Docket #24-3 part 1).

Mr. Cameron states that despite the fact that he had already been diagnosed with Crohn's Disease, and had been under a thorough regimen to deal with this problem, Dr. Myers:

> Denied the Plaintiff's urgently needed prescribed medication (Remicade), as a result of that denial, the Plaintiff became the victim of an outbreak of the seriously devastating, disease (Pyoderma Gangrenosum), a flesh eating disease, that dissolves away the skin, leaving deformity of the skin layer, while producing excruciating physical pain to the infected areas over the Plaintiff's body.

(Docket #24, plaintiff's affidavit ¶2).

The medical records submitted by Mr. Cameron confirm that Dr. James Coots, M.D., diagnosed Mr. Cameron with Pyoderma Gangrenosum in February 2007, after he arrived at another Indiana Department of Correction ("IDOC") facility. (Docket # 24-3 part 1). Dr. Coots prescribed extensive treatment for his condition. (Docket #24-3 parts 1-3). At the hearing, Mr. Cameron testified that he was without treatment from early September 2006 through early February 2007.

While he was still at the Indiana State Prison under Dr. Myers's care, Mr. Cameron sought treatment for his new medical problem by submitting health care requests. But Dr. Myers did not "conduct an adequate examination, of the newly created disease . . . that would have prevented the Plaintiff's suffering, by curbing, controlling, and curing the uncontrolled fury of the devastating pain and

deforming properties that the disease leaves in its wake." (Docket #24, plaintiff's affidavit ¶ 3).

Mr. Cameron filed a grievance pursuant to the IDOC administrative grievance program, grieving the denial of care for his medical problems. (Docket #24-2), but he was unable to obtain relief. (plaintiff's affidavit ¶ 6). Finally, on January 5, 2007, he filed this action. Shortly thereafter, prison officials transferred Mr. Cameron from the Indiana State Prison to another IDOC facility. Mr. Cameron submits the medical records at the new facility, and observes that:

> The Progress Notes, denoting the presence of the Disease (Pyoderma Gangrenosum), after the medical treatment rendered by the Defendant. The Medication Administration Records, showing the Plaintiff was given medication (at the new facility) for the infected disease. The Treatment Notes of the new Doctor and Nurse Practitioner, who for several months had to render treatment to the Plaintiff for the inflicted disease, and also, provided the prescribed medical regimen, that included the (Remecade), medication, recommended by the specialist, that treated the Plaintiff, prior to the Defendant's lack of treatment that caused this painful series of events, that will plague the Plaintiff for the rest of his life.

(Docket #24, plaintiff's affidavit ¶ 7).

At the hearing, Mr. Cameron testified that his Remicade prescription expired on or about September 21, 2006. He further testified that after Dr. Meyers let his Remicade prescription lapse he suffered from diarrhea, rectal bleeding, and insomnia. These were symptoms he had suffered before Dr. Nehme prescribed Remicade for him. The Remicade controlled these symptoms, and Mr. Cameron did not suffer from these symptoms while he was on the medication.

After his Remicade ran out, Mr. Cameron also began to suffer more severe symptoms, including "excruciating pain" and a feeling that flesh on his legs was

4

"dissolving like alka-seltzer." Despite Mr. Cameron's requests for care for these symptoms, Dr. Myers did not examine him and nothing was done to treat these symptoms while he was at the Indiana State Prison. After he was transferred to the Pendleton Correctional Facility, Dr. Coots examined him and diagnosed him with Pyoderma Gangrenosum, a flesh eating disease. Dr. Coots told Mr. Cameron that the non-treatment of the Crohn's Disease caused him to develop Pyoderma Gangrenosum. Dr. Coots treated Mr. Cameron for both Crohn's Disease and Pyoderma Gangrenosum. The diarrhea, rectal bleeding, and insomnia were resolved by the end of February, and the symptoms of both diseases disappeared by May 2007. Mr. Cameron testified that he had suffered permanent scarring from Pyoderma Gangrenosum, and showed the court extensive scars on both of his legs.

The court finds that:

1. Between September 2006 and January 2007, plaintiff Larry Cameron was housed at the Indiana State Prison.

2. Prior to September 2006, Mr. Cameron had been diagnosed with Crohn's Disease, which constitutes a serious medical need, and Dr. Omar Nehme, M.D., prescribed a medical regimen that was successfully treating his condition.

3. By at least September 2006, Dr. Nehme ceased to be Mr. Cameron's care giver, and Dr. Gerald Myers, M.D., took over as Mr. Cameron's doctor.

4. Dr. Myers did not continue the treatment program Dr. Nehme had prescribed for Mr. Cameron, nor did he examine Mr. Cameron to determine his medical needs and prescribe alternate treatment for Mr. Cameron's medical

5

condition. After Dr. Myers took over Mr. Cameron's case, he received no treatment for Crohn's Disease.

5. Because Dr. Myers discontinued his treatment program for Crohn's Disease, Mr. Cameron suffered from diarrhea, rectal bleeding, and insomnia. These were symptoms Mr. Cameron had suffered before Dr. Nehme prescribed Remicade for him, and the Remicade had controlled these symptoms. Mr. Cameron suffered from these symptoms from September 2006 through February 2007. These symptoms disappeared by the end of February 2007, after Dr. Coots renewed treatment for Crohn's Disease.

6. Because Dr. Myers did not continue Mr. Cameron's treatment program for Crohn's disease, he began to suffer excruciating pain and a feeling that flesh on his legs was dissolving. The medical records submitted by Mr. Cameron confirm that Dr. Coots diagnosed him with Pyoderma Gangrenosum in February 2007, after he arrived at the Pendleton Correctional Facility. Pyoderma Gangrenosum is a flesh eating disease, that dissolves away the skin, leaving deformity of the skin layer, while producing excruciating physical pain to the infected areas over the victim's body.

7. Pyoderma Gangrenosum caused Mr. Cameron to suffer disfigurement and excruciating physical pain to the infected areas over his body. The court observed permanent, large, and very ugly looking scarring in multiple sites on both of Mr. Cameron's legs.

8. While he was still at the Indiana State Prison, Mr. Cameron sought

treatment for the medical problems he developed after Dr. Myers did not continue his Crohn's treatment, but Dr. Myers did not examine or treat him.

9. After he was transferred to another Indiana Department of Correction facility, Dr. Coots examined him and prescribed extensive treatment for both his medical conditions.

10. The filing fee in this case was $350.00.

## II. CONCLUSIONS OF LAW

In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). Negligence does not satisfy the "deliberate indifference" standard, Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994), and it is not enough to show that a defendant merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995). Even medical malpractice and incompetence do not state a claim of deliberate indifference. Walker v. Peters, 233 F.3d 494 (7th Cir. 2000).

In regard to damages, compensatory damages are the amount of money that will fairly pay Mr. Cameron for the injury he sustained. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to the defendant and others not to engage in similar conduct in the future. Punitive damages should only be assessed if the defendant's conduct is malicious or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring the plaintiff.

The court concludes that:

1. In September 2006, when Dr. Myers took over as Mr. Cameron's care giver, he had already been diagnosed with Crohn's Disease, a serious medical need, and he was receiving treatment for that condition. Dr. Myers's failure to either continue the treatment program already in place when he became Mr. Cameron's doctor or to examine Mr. Cameron himself and prescribe an alternate treatment program constituted deliberate indifference to a serious medical need.

2. While Mr. Cameron was still at the Indiana State Prison with Dr. Myers as his sole care giver, he developed symptoms that were later diagnosed as Pyoderma Gangrenosum, a serious medical need. Dr. Myer's failure to respond to Mr. Cameron's requests that he be examined for these symptoms also constituted deliberate indifference to Mr. Cameron's serous medical needs.

8

3. Because Mr. Cameron suffered an actual physical injury in the form of disfigurement and extensive pain, he is entitled to more than nominal damages, and he is entitled to damages for both physical injuries and mental pain and suffering. He is also entitled to the cost of filing the complaint in this case.

4. The evidence before the court, however, does not support an inference that Dr. Myers's conduct was malicious or in reckless disregard of the plaintiff's rights. There is no evidence that Dr. Myers's conduct was accompanied by ill will or spite, or was done for the purpose of injuring Mr. Cameron. Accordingly, Mr. Cameron is not entitled to punitive damages.

### III. CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that the plaintiff's motion for default judgment (Docket #17) be granted, and that judgment be entered in favor of the plaintiff, Larry D. Cameron, and against Defendant Gerald Myers, M.D., in the amount of $250,350 in actual and compensatory damages and costs.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. FED. R. CIV. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. See Thomas v. Arn, 474 U.S. 140 (1985); Lerro v. Quaker Oats Co., 84 F.3d 239 (7th Cir. 1996); Lockert v. Faulkner, 843 F.2d 1015 (7th Cir. 1988); Video Views, Inc. v. Studio 21 Ltd., 797 F.2d 538 (7th Cir. 1986).**

**SO ORDERED** this 28th day of May, 2008.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
