UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LARRY D. CAMERON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | NO. 3:07-CV-008 PPS |
| DR. GERALD MYERS, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Prisoner Larry Cameron obtained a default judgment against Dr. Gerald Myers. Myers sought to vacate the judgment under Rule 60(b), but I denied that motion because of his failure to show "good cause" for failing to respond to the lawsuit until after final judgment. *See* June 18, 2009 Order [DE 64]. Because some of the evidence presented at the hearing was subject to an earlier protective order, at the conclusion of the opinion, I gave the parties 10 days to tell me if and why they thought the Order should remain sealed. *Id*. at 14. Myers did offer a response requesting the order stay sealed. [DE 65]. A short time later, he filed his notice of appeal challenging the denial of his motion to set aside default judgment. [DE 68]. For the reasons discussed below, I am unpersuaded that the June 18 Order contains any information justifying continued confidentiality and so the Clerk is directed to unseal it.[1]

In the June 18 Order, I directed Myers' attention to two recent Seventh Circuit cases,

---

[1] Although a notice of appeal divests jurisdiction from a district court to the court of appeals, it only does so for "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). Ancillary issues may still be addressed by the district court after the appeal is filed. *United States v. Burton*, 543 F.3d 950, 952 (7th Cir. 2008).

*United States v. Foster*, 564 F.3d 852, 853-55 (7th Cir. 2009); *Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830, 831 (7th Cir. 2009), which discuss the limited justifications for keeping confidential those documents which affect the disposition of litigation. As discussed in those opinions, most court documents should "remain open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality," such as those articulated by specific statutes or privileges. *Foster*, 564 F.3d at 853-54. In this case, the parties entered a Stipulated Protective Order signed by Magistrate Judge Nuechterlein [DE 53] wherein they agreed that certain information related to Myers would not be disclosed outside of the litigation and would be sealed. It did not specify, however, whether documents entered into the court record, as opposed to just those records exchanged in discovery, would remain sealed. And it certainly didn't address actual court orders. Cases such as *Baxter Inti'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) make a clear distinction between the very broad allowance for parties to keep confidential those documents obtained in discovery versus the much more strenuous presumption against keeping information secret when it influences or is used as part of a judicial decision. "What happens in the federal courts is presumptively open to public scrutiny." *Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

Following this logic, a particularly strong reason must be presented to keep the judicial opinion itself cut off from public access. Myers argues that the June 18 Order's discussion of his diagnosis and treatment for ADHD, which he offered as providing good cause for his failure to respond to the suit, will damage his reputation as a medical professional and open him up to more "nuisance" lawsuits from other prisoners. He does not address *Foster* or *Milam* or any other case as support for the proposition that this is enough to keep the order sealed. A litigant's preference for secrecy is not sufficient, by itself, to justify keeping a document under seal.

*Foster*, 564 F.3d at 854. "Any doubts must be resolved in favor of disclosure." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).

Instead of identifying a factor which could be used as a reason for keeping the June 18 Order sealed, Myers spends most of his effort arguing why the Order, which denied his motion denying to vacate, was incorrect on its merits. He insists the Order misinterprets evidence concerning service of process. Myers Response [DE 65], ¶¶ 7-9. Specifically, Myers says that the Order confuses two purported services of process - one from February which Cameron testified he personally delivered to Myers at work in the prison but which Myers never signed, and the other a March summons served by the marshals with Myers' signature and home address appearing on it. Admittedly, the descriptions of the two documents were blended together in the June 18 Order. To clarify, it appears that Cameron, acting *pro se* at the time and unfamiliar with the intricacies of civil litigation procedure, attempted to serve process on his own. In fact, he submitted a letter to the court just two days before his attempted service, offering to serve the complaint himself, "if the marshal is having difficulty." *See* Feb. 21, 2007 letter [DE 4]. He later filed an "affidavit and proof of service," stating that on February 23, he handed a summons and complaint to a prison nurse, who he watched then hand over the document to Dr. Myers. Affidavit [DE 8]. The copy of the summons he attached to this affidavit was not signed by Dr. Myers. *Id*. To be clear, I found Cameron's later testimony with respect to this event to be very credible, and he never maintained that he sought Myers' signature.

The second summons was sent to Myers' home address in March, about a month after Myers attempted his personal delivery. This March summons was served by the marshals and it was signed by Myers. Myers does not deny that it is his signature, only that he does not know how it got there. Nor does he deny that it is his address listed on the document.

Although perhaps left ambiguous, the June 18 Order never relied on a conclusion that the summons handed to Myers at work was the same one that contains his signature. Myers maintained that his failure to respond to the complaint was excusable because his ADHD caused him to forget or overlook the summons when received at home, but that the same ADHD did not interfere with his ability as a physician because it did not affect him at work. The "office summons," despite not being signed, was relevant. This is because the evidence, namely Camerons credible testimony, showed that he was told about the suit at work a month before ever receiving the official summons. So even if Myers' ADHD was in fact worse at home than at work, I was still persuaded that he was made aware of the lawsuit at work, albeit not necessarily in a manner sufficient to satisfy the legal requirements of service. But since those requirements were met a month later, he was left with no grounds to excuse his failure to respond. The signed summons (and again, Myers does not deny that it his signature, only that he doesn't know how it got there), is proof that service was fully performed, and the workplace delivery that occurred is evidence of additional notification. But even if Myers had proven that he never received the documents while at work, and was left only with the unexplained signed summons, his diagnosis and treatment for ADHD would still not have provided the requisite "good cause" to set-aside a final default judgment under Rule 60(b).

In the end, even if Myers is correct on the merits of his Rule 60(b) motion, now challenged on appeal, it still does not translate into a right to keep the June 18 Order under seal and hidden from the public. This is especially true considering that the subjects raised in the June 18 order were already discussed in open court at the hearing held on Myers' motion to vacate.[2] With the cat already out of the bag, there is little to no confidentiality interest remaining

---

[2]In his Response, Myers noted that although the hearing was held in public, Cameron's sister was asked to leave. Myers Response [DE 65], ¶ 5. However, this was done because she had an unfortunate

to protect.

    Accordingly, the Clerk is **DIRECTED** to unseal the June 18, 2009 Order [DE 64].

    **SO ORDERED.**

    **ENTERED**: July 29, 2009

                                                  s/ Philip P. Simon
                                                  PHILIP P. SIMON, JUDGE
                                                  UNITED STATES DISTRICT COURT

---

coughing fit which proved to be disruptive, not because of any confidentiality concerns. No other individuals were asked to leave the hearing, and Myers has never asked that the transcript be sealed.